# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DARRYL LEE CHERRY,                   )
                                     )
          Plaintiff,                 )
                                     )
     v.                              )     CIVIL ACTION NO. 04-292 ERIE
                                     )
UNITED STATES OF AMERICA,            )     JUDGE MCLAUGHLIN
DR. OLSON, FCI-MCKEAN,               )     MAGISTRATE JUDGE BAXTER
DR. BEAM, FCI-MCKEAN, MR. SMITH,     )
HOSPITAL ADMINISTRATOR,              )     Electronically Filed
JAMES F. SHERMAN, WARDEN             )
FCI-MCKEAN, D. SCOTT DODRILL,        )
REGIONAL DIRECTOR,                   )
HARRELL WATTS, ADMINISTRATOR,        )
NEWTON E. KENDIG,                    )
BOP MEDICAL DIR.                     )
                                     )
          Defendants.                )

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION FOR SUMMARY JUDGMENT

Plaintiff Darryl Lee Cherry filed this *pro se* lawsuit alleging that, while incarcerated at a federal prison in McKean County, Pennsylvania ("FCI McKean"), he received inadequate medical care from defendants in connection with the treatment of his Hepatitis C virus ("Hepatitis C" or "HCV"). Specifically, plaintiff's Amended Complaint asserts a claim pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388 (1971) alleging that defendants violated his Eighth Amendment right to be free from cruel and unusual punishment, and an apparent negligence claim under the Federal Tort Claims Act, 28 U.S.C. § 2670 *et seq.* ("FTCA"). Both claims are premised on defendants' failure to perform a liver biopsy and to treat him with Interferon and Ribavirin for his Hepatitis C. As a result of

defendants' alleged negligence and deliberate indifference, plaintiff seeks compensatory and punitive damages totaling $48.5 million.

As detailed below, however, the Court should dismiss plaintiff's *Bivens* and FTCA claims for reasons both procedural and substantive. Alternatively, the Court should enter summary judgment in favor of defendants because the uncontroverted record evidence demonstrates that plaintiff is not entitled to relief in this action.

## FACTUAL BACKGROUND

## I.    THE PARTIES

Plaintiff is a federal inmate currently serving a 121 month term of imprisonment, to be followed by a five (5) year term of supervised release, for Possession with Intent to Distribute Cocaine. (*See* Public Information Data at p. 3 (attached as Exhibit 1a to Decl. of Joyce Horikawa.)) Plaintiff's sentence began on April 28, 2000, and he was designated to FCI McKean on June 30, 2000. (*See id.* at 1 and 4.) Plaintiff has remained at FCI McKean until the present, except for occasional transfers to other facilities, including an extended absence from FCI McKean between December 6, 2002 and May 2, 2003. (*See id.* at 1.) Assuming plaintiff receives all Good Conduct Time available, his projected release date is June 20, 2008. (*Id.* at 4.)

Defendants are the United States of America and seven (7) individuals (the "Individual Defendants"). The Individual Defendants are as follows:

1.      Dennis Olson, M.D., Clinical Director of FCI McKean;

2.      Herbert Beam, M.D., Staff Physician, FCI McKean;

3.      Rodney Smith, Health Services Administrator, FCI McKean;

4.      James Sherman, Warden, FCI McKean;

5.      D. Scott Dodrill, Federal Bureau of Prisons ("BOP"), Northeast Regional
        Director;

6.      Harrell Watts, National Inmate Appeals Administrator; and

7.      Newton Kendig, BOP Medical Director.

(*See* Am. Compl., ¶ 5; Decl. of Dennis Olson, M.D., ¶ 1 (attached as Exhibit 2); Administrative

Tort Claim No. TRT-NER-2005-00083 at 2 and 4 (attached as Exhibit 1c to Decl. of Joyce

Horikawa.))

## II.      SUMMARY OF PLAINTIFF'S MEDICAL RECORDS

The medical attention that plaintiff received at FCI McKean is summarized in the

attached declaration of Dr. Olson.  (*See* Decl. of Dennis Olson, M.D., ¶¶ 3a through 3vvvvvvv

(attached as Exhibit 2); *see also* Plaintiff's Prison Medical Records (attached as Exhibit 2a to

Decl. of Dennis Olson, M.D.))  Dr. Olson's summary of plaintiff's medical records is highly

detailed, spanning thirty-three (33) pages and 178 sub-paragraphs, and addresses plaintiff's

treatment for Hepatitis C as well as numerous other ailments.  Such ailments include, for

example, peripheral venous insufficiency/ peripheral vascular disease and attendant ulcers and

edemas (Decl. of Dennis Olson, M.D., ¶¶ 3z and 3yy); lumbrosacral sprain (*id.*, ¶ 3jj); rash and

itchy skin (*id.*, ¶ 3hhh); toenail fungus (*id.*, ¶ 3qqq); bald spots on plaintiff's scalp and beard (*id.*,

¶ 3llll); cellulitis (*id.*, ¶ 3mmmmm); warts (*id.*, ¶ 3xxxxxx); and bronchitis (*id.*, ¶ 3qqqqqqq).

Dr. Olson's summary of plaintiff's medical history is expressly incorporated in this brief

but, in the interest of judicial economy, will not be repeated here.  Nonetheless, defendants

provide the following summary of the specific treatment plaintiff received for his Hepatitis C

since his diagnosis on July 26, 2000 (*id.,* ¶ 3k), because that is the basis for this lawsuit:

-3-

| Date | Type of Medical Record | Assessment and Treatment for Hepatitis C | Olson Decl. (¶); Medical Record (p.) |
|---|---|---|---|
| 7/26/00 | Blood Levels received | Serum alanine aminotransferase ("ALT")[1] level 42 - slightly elevated (reference range 8-40) | ¶ 3g; p. 138 |
| 8/3/00 | General Medical Chronic Clinic Care | Examined and assessed with chronic HCV; told to return in 3 mos.; educated regarding disease complications, progression and prognosis, diet, weight loss, smoking, exercise and medication | ¶ 3m; p. 110-111 |
| 11/2/00 | General Medical Chronic Clinic Care | Examined and assessed with HCV; scheduled to return in 3 mos.; educated regarding the nature of the disease, complications from the disease, treatment alternatives and smoking | ¶ 3v; p.102-03; |
| 2/1/01 | General Medical Chronic Clinic Care | Examined and assessed with HCV; told to return in 3 mos.; no symptomology of HCV; educated regarding diet, skin care and medicine use | ¶ 3aa; p. 98-99, 156 |
| 2/20/01 | Blood Levels received | ALT level 35 - normal (reference range 8-40) | ¶ 3bb; p.135 |
| 5/3/01 | General Medical Chronic Clinic Care | Examined and assessed with HCV; told to return to the clinic in 3 mos.; educated regarding treatment alternatives, diet, weight loss and exercise | ¶ 3ff; p. 94-95 |
| 8/2/01 | General Medical Chronic Clinic Care | Examined and assessed with HCV; told to return in 3 mos.; educated regarding nature and complications of the disease, its progression and prognosis, treatment alternatives, diet, quitting smoking and exercise; test results explained to him | ¶ 3pp; p. 88-89 |
| 8/15/01 | Blood Levels received | ALT level 47 - normal (reference range 11-66)[2] | ¶ 3qq; p. 134 |
| 11/1/01 | General Medical Chronic Clinic Care | Examined and assessed with HCV; no acute distress; instructed to return in 3 mos.; educated regarding nature of the disease, treatment alternatives, diet and smoking | ¶ 3bbb; p. 82-83 |

---

[1]ALT is a liver enzyme that is tested to determine if a patient has liver damage. (*See, e.g.,* NIH Consensus Development Program, Management of Hepatitis C: 2002, National Institutes of Health Consensus Conference Statement, June 10-12, 2002 at 4 (attached as Exhibit 1e to Decl. of Joyce Horikawa.))

[2]The ALT reference ranges vary because FCI McKean used two different laboratories with different analyzing equipment and, thus, different calibrations. Tests performed at the Springfield, Missouri laboratory have an ALT reference range of 11-66, whereas tests performed at the Rochester, Minnesota laboratory have an ALT reference range of 8-40. (*See* Prison Medical Records at 119-140 (attached as Exhibit 2a to Decl. of Dennis Olson, M.D.))

| Date | Type of Medical Record | Assessment and Treatment for Hepatitis C | Olson Decl. (¶); Medical Record (p.) |
|---|---|---|---|
| 2/4/02 | General Medical Chronic Clinic Care | Examined and assessed with HCV; told to return in 3 mos.; educated regarding the nature of the disease, treatment alternatives, diet, weight loss and exercise | ¶ 3iii; p. 76-77 |
| 2/28/02 | Blood Levels received | ALT level 61 - normal (reference range 11-66) | ¶ 3kkk; p. 133 |
| 5/6/02 | General Medical Chronic Clinic Care | Examined and assessed with HCV; appeared well; no evidence the Hepatitis C had progressed or was causing complications; instructed to return in 3 mos.; educated regarding the nature of his disease and disease complications, progression and prognosis. | ¶ 3lll; p. 72-73 |
| 5/22/02 | Blood Levels received | ALT level 53 - normal (reference range 11-66) | ¶ 3nnn; p. 132 |
| 8/6/02 | General Medical Chronic Clinic Care | Examined and assessed with HCV; educated regarding the disease's nature, complications, progression and prognosis as well as treatment alternatives | ¶ 3qqq; p. 68-69 |
| 8/24/02 | Blood Levels received | ALT level 56 - normal (reference range 11-66) | ¶ 3rrr; p. 131 |
| 3/24/03 | Blood Levels received | ALT level 96 - elevated (reference range 8-40) | ¶ 3xxx; p. 130 |
| 5/13/03 | General Medical Chronic Clinic Care | Examined and assessed with HCV | ¶ 3eeee; p. 59-60 |
| 6/2/03 | Blood Levels received | ALT level 53 - normal (reference range 11-66) | ¶ 3gggg; p. 129 |
| 8/10/03 | General Medical Chronic Clinic Care | Examined and assessed with HCV | ¶ 3llll; p. 59-60 |
| 8/27/03 | Blood Levels received | ALT level 67 - slightly elevated (reference range 11-66) | ¶ 3mmmm; p. 128 |
| 10/6/03 | Blood Levels received | ALT level 68 - slightly elevated (reference range 11-66) | ¶ 3oooo; p. 127 |
| 11/4/03 | General Medical Chronic Clinic Care | Examined and assessed with HCV; in no pain; educated on etiology, diet, advised to quit smoking, and medication dosage and administration; told to follow-up in 3 mos. | ¶ 3uuuu; p. 49-50 |
| 2/4/04 | General Medical Chronic Clinic Care | Examined and assessed with Hepatitis C; reported no pain and that he felt well; given Hepatitis A and B vaccines | ¶ 3yyyy; p. 45-56 |
| 5/5/04 | General Medical Chronic Clinic Care | Examined and assessed with Hepatitis C; reported no pain | ¶ 3jjjjj; p. 37-38 |
| 5/20/04 | Blood Levels received | ALT level 51 - normal (reference range 11-66) | ¶ 3lllll; p. 124 |

| Date | Type of Medical Record | Assessment and Treatment for Hepatitis C | Olson Decl. (¶); Medical Record (p.) |
|------|------------------------|-------------------------------------------|--------------------------------------|
| 8/3/04 | General Medical Chronic Clinic Care | Examined and assessed with Hepatitis C; test results and treatment plan discussed; educated regarding etiology, complications, prognosis and prevention of his disease, as well as diet and smoking; scheduled to return in 3 mos. | ¶ 3aaaaaa; p. 27-28 |
| 8/12/04 | Blood Levels received | ALT level 55 - normal (reference range 11-66) | ¶ 3cccccc; p. 123 |
| 10/28/04 | General Medical Chronic Clinic Care | Examined and assessed with Hepatitis C; educated regarding test results, treatment plan, diet, smoking and medication dosage | ¶ 3oooooo; p. 19-20 |
| 2/7/05 | Blood Levels received | ALT level 51 - normal (reference range 11-66) | ¶ 3aaaaaaa; p. 120 |
| 2/22/05 | General Medical Chronic Clinic Care | Examined and assessed with Hepatitis C; in no apparent distress; educated regarding test results and treatment plan; told to return in 3 mos. | ¶ 3ggggggg; p. 9-10 |
| 4/1/05 | Blood Levels received | ALT level 59 - elevated (reference range 0-40) | ¶ 3jjjjjjj; p. 119 |
| 5/10/05 | General Medical Chronic Clinic Care | Examined and assessed with Hepatitis C; told to return in 3 mos. | ¶ 3qqqqqqq; p. 4-5, 145 |

## III.   PLAINTIFF'S ATTEMPTS TO EXHAUST HIS ADMINISTRATIVE REMEDIES

On February 13, 2004, plaintiff submitted a Request for Administrative Remedy complaining that the BOP had refused his request for a liver biopsy and treatment with interferon and ribaviron. (*See* Administrative Remedy, Case No. 326198 at 5-6 (attached as Exhibit 1b to Decl. of Joyce Horikawa.)) Plaintiff's request was denied by a staff member of Individual Defendant Sherman on March 25, 2004. (*See id.* at 7.) Sherman's denial explained that plaintiff had been evaluated every three (3) months at the chronic care clinic since his diagnosis with Hepatitis C, and that he had been educated as to his condition at each clinic visit. The response further stated that plaintiff "currently do[es] not fit the guidelines to obtain a liver biopsy or receive medication." (*Id.*) Plaintiff appealed Sherman's response on April 5, 2004. (*Id.* at 3.) On May 6, 2004, plaintiff's appeal was denied by a staff member of Individual Defendant

Dodrill.  (*See id.* at 4.)  Plaintiff then filed a second appeal on June 1, 2004 to the BOP's Central

Office.  (*See id.* at 1.)  This appeal was also denied. (*Id.* at 2.)  In a response dated July 21, 2004,

Individual Defendant Watts explained that plaintiff's ALT levels were consistently normal or

very near normal for the past two (2) years.  (*Id.*)   The response further stated that the BOP

guidelines for the treatment of Hepatitis C were based on the body of scientific literature, much

of which is summarized in the NIH Consensus Conference Statement: "Management of Hepatitis

C, 2002."  And the literature has shown that individuals with persistently normal or near-normal

ALT levels are unlikely to have significant or progressive liver disease.  (*Id.*)

Plaintiff filed his original complaint in this action on October 4, 2004.  Just days earlier,

on September 28, 2004, plaintiff filed an administrative tort claim alleging that medical staff at

FCI McKean refused to treat his Hepatitis C and refused his request for a liver biopsy.  (*See*

Administrative Tort Case No. TRT-NER-2005-00083 at 1-2 (attached as Exhibit 1c to Decl. of

Joyce Horikawa.))  Plaintiff's administrative tort claim was denied on March 24, 2005.  (*See id.*

at 8.)  The denial explained that, since his diagnosis with Hepatitis C, plaintiff has been seen at

the chronic care clinic every three (3) months, and that he has had lab work completed on a

regular basis to check liver function.  (*Id.*)  "Your liver function tests have not been elevated

significantly enough to meet the criteria to receive a liver biopsy or treatment with

interferon/ribaviron."  (*Id.*)  Plaintiff was further advised that he would be monitored closely, and

would receive appropriate medical treatment for the symptoms he presented.  (*Id.*)

A few months after his administrative tort claim was denied, plaintiff filed an Amended

Complaint in this action on May 16, 2005.  The most salient difference between the complaints is

-7-

that the Amended Complaint added the United States as a defendant and included allegations of negligence.  *Compare* Compl., ¶ 1 *with* Am. Compl., ¶ 1.

**APPLICABLE LEGAL STANDARDS**

**I.      MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

The party asserting the existence of federal jurisdiction bears the burden of proving that jurisdiction over the subject matter actually exists.  *Int'l Ass'n of Machinists & Aerospace Workers v. Northwest Airlines,* 673 F.2d 700, 711 n.16 (3d Cir. 1982); *Shepherdson v. Local Union No. 401,* 823 F. Supp. 1245, 1248 (E.D. Pa. 1993).  When considering a challenge to a court's jurisdiction under Fed. R. Civ. P. 12(b)(1), a court ordinarily need not limit its inquiry to the facts as pled in the complaint.  *Land v. Dollar,* 330 U.S. 731, 735 (1947).  Rather, "[t]he court may inquire by affidavits or otherwise, into the facts as they exist."  *Id.* at 735 n.4.  Such inquiry is permissible because a federal court must assure itself that it has jurisdiction over the case, and it may even resolve factual disputes in doing so.  *See Boyle v. The Governor's Veterans Outreach & Assistance Ctr.,* 925 F.2d 71, 74 (3d Cir. 1991) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977)).

**II.      MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

When personal jurisdiction is challenged under Fed. R. Civ. P. 12(b)(2), the plaintiff bears the burden of proving that the defendant has the requisite minimum contacts with the forum state for the exercise of personal jurisdiction to be constitutionally permissible.  *Flanagan v. Shively,* 783 F. Supp. 922, 936 (M.D. Pa.), *aff'd,* 980 F.2d 722 (3d Cir. 1992).  Moreover, the "plaintiff may not rest on the allegations of the complaint alone, but must establish the requisite jurisdictional facts through affidavits, answers to interrogatories" or other similar evidence.  *Id.*

-8-

## III.   MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

A motion to dismiss under Rule 12(b)(6) is the appropriate method by which to challenge the legal sufficiency of claims in a complaint.  *See* Fed. R. Civ. P. 12(b)(6); *Raines v. Haverford College*, 849 F. Supp. 1009, 1010 (E.D. Pa. 1994).  Although courts reviewing Rule 12(b)(6) motions generally consider only the allegations in the complaint, courts are also free to examine any attached exhibits attached, other undisputed documents relied on by the plaintiff, other items appearing in the record of the case, and matters of public record.  *Raines*, 849 F. Supp. at 1019; *see also Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.2 (3d Cir. 1994). Indeed, if a court could not consider such documents, "`a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document upon which [he] relied.'"  *Interfaith Community Org. v. AlliedSignal, Inc.*, 928 F. Supp. 1339, 1345 (D.N.J. 1996) (quoting *Dykes v. Southeastern Pa. Trans. Auth.*, 68 F.3d 1564, 1567 n.3 (3d Cir. 1995)).

While courts considering motions to dismiss have a limited role, these courts should grant such motions where it is clear that no relief could be granted under any set of facts that are consistent with the allegations of a complaint.  *AlliedSignal*, 928 F. Supp. at 1346.  The issue is not whether the plaintiff will ultimately prevail but whether the plaintiff has any chance of doing so.  *Id.; Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

## IV.   MOTION FOR SUMMARY JUDGMENT

Summary judgment is proper if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  That is, Rule 56(c) "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The plaintiff cannot merely rest on allegations in his complaint. *Id.* at 324. To defeat a motion for summary judgment, "the nonmoving party must adduce more than a mere scintilla of evidence in his favor." *Williams v. Borough of Chester,* 891 F.2d 458, 460 (3d Cir. 1989).

## ARGUMENT

## I.    PLAINTIFFS' *BIVENS* CLAIM SHOULD BE DISMISSED

Plaintiffs' *Bivens* claim cannot succeed for multiple reasons. This Court lacks personal jurisdiction over two of the Individual Defendants, Watts and Kendig, because plaintiff has failed to allege that either has sufficient minimum contacts with Pennsylvania to be haled into court here. Additionally, plaintiff cannot prove the "deliberate indifference" necessary to assert a claim under the Eighth Amendment. The Individual Defendants that did not directly treat plaintiff (Watts, Kendig, Smith, Sherman and Dodrill) should be dismissed because they merely deferred to the medical professionals already treating plaintiff. And the two Individual Defendants that did treat plaintiff – Drs. Beam and Olson – should be dismissed because plaintiff cannot demonstrate that either acted with deliberate indifference. Finally, even if plaintiff could show a constitutional violation, defendants are entitled to qualified immunity because the allegations do not amount to the violation of a clearly established constitutional right.

### A.    Individual Defendants Watts And Kendig Should Be Dismissed Because They Lack The Requisite Minimum Contacts With Pennsylvania

A federal district court is permitted to exercise personal jurisdiction over an out-of-state defendant to the extent authorized by the law of the forum state. *See Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987) (citing Fed. R. Civ. P.

4(e)); *Yohn v. Waco Equip Co.,* No. Civ. A. 03-904PBT, 2003 WL 2284420, at *2 (E.D. Pa. Nov. 26, 2003). Because this Court sits in Pennsylvania, it looks to Pennsylvania law to determine whether it may exercise personal jurisdiction over the non-resident Individual Defendants.

To carry the burden of establishing sufficient minimum contacts by the defendant, the plaintiff must show either (1) the particular cause of action sued upon arose from the defendant's activities in the forum state ("specific jurisdiction"); or (2) that the defendant has "continuous and systematic" contacts with the forum state ("general jurisdiction"). *See Yost,* 2003 WL 22844220, at *3 (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 412-13, 414 (1984)).

Applying these precepts here, plaintiff has failed to carry his burden of demonstrating general or specific personal jurisdiction over the non-resident Individual Defendants in this case, Watts and Kendig. (*See* Docket at nos. 17 and 18 (waiver of service requests indicate these defendants reside in Washington, D.C.)) The caption identifies both of these defendants as BOP prison administrators; there is no allegation that these Individual Defendants provided medical treatment to plaintiff. Plaintiff's claim against Watts is based entirely on Watt's denial of plaintiff's appeal of his administrative remedy request. (*See* Am. Compl., ¶ 21; Administrative Remedy, Case No. 326198 at 2 (attached as Exhibit 1b to Decl. of Joyce Horikawa.)) The Amended Complaint does not allege that Kendig denied a specific appeal or request by plaintiff for medical care. Plaintiff's only allegation against Kendig is to include him among the Individual Defendants who allegedly "knew that Plaintiff['s] HCV have [sic] been documented by BOP['s] own record since 2000 and still the Defendants repeatedly denied treatment." (Am. Compl., ¶ 24.)

Plaintiff's allegations against Individual Defendants Watts and Kendig are insufficient to demonstrate the minimum contacts necessary to support personal jurisdiction. At best, plaintiff alleges that these defendants had some role in denying plaintiff's medical treatment. But plaintiff never asserts that either entered the state of Pennsylvania to do so. To the contrary, the denial by Watts was sent by letter, and there is no alleged communication from Kendig. Because plaintiff cannot establish specific jurisdiction, he is left with demonstrating that these Individual Defendants engaged in "continuous and substantial" activities within Pennsylvania sufficient for the exercise of general jurisdiction. Plaintiff cannot make this showing, either. The Amended Complaint does not allege that either Watts or Kendig owns real property, resides, or conducts business of any kind in Pennsylvania. Because plaintiff has no evidence that Individual Defendants Watts and Kendig have sufficient minimum contacts with the state of Pennsylvania, they should be dismissed from this action under Fed. R. Civ. P. 12(b)(2).[3]

### B.    Plaintiff's *Bivens* Claim Fails Because He Cannot Demonstrate That The Individual Defendants Acted With "Deliberate Indifference"

Incarcerated prisoners are entitled to reasonable medical care under the Eight Amendment to the United States Constitution. *See Estelle v. Gamble,* 429 U.S. 97, 104-05 (1976). To prove a violation of the Eighth Amendment based on inadequate medical care, a plaintiff must demonstrate that the defendant exhibited "deliberate indifference to [his] serious medical needs." *Id.* at 104; *West v. Keve*, 571 F.2d 158, 161 (3d Cir. 1978). Thus, the requirement for such a

---

[3]Additionally, the *Bivens* claim against Individual Defendant Dodrill should be dismissed for lack of personal jurisdiction because the docket sheet (no. 15) indicates that he has not been served properly. *See Omni Capital Int'l v. Rudolph Wolff & Co.,* 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied.").

claim is two-fold – the plaintiff must establish (1) a serious medical need; and (2) culpable state of mind on the part of the defendants, amounting to deliberate indifference. *Monmouth County Correction Inst. Inmates v. Lanzaro,* 834 F.2d 326, 346 (3d Cir. 1987).

In this case, defendants do not dispute that Hepatitis C is a serious medical need. However, defendants vigorously dispute that they acted with deliberate indifference to plaintiff's HCV. Deliberate indifference may be displayed in a myriad of ways, such as where a prison official "(1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir. 1999) (quoting *Monmouth,* 834 F.2d at 346-47).

It is well-established that medical malpractice is insufficient to present a constitutional violation. *See Estelle,* 429 U.S. at 106; *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1999); *Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 762 (3d Cir. 1979) (negligent medical treatment is not actionable under the Eighth Amendment); *Unterberg v. Correctional Medical Systems, Inc.,* 799 F.Supp. 490, 497 (E.D.Pa. 1992) (medical malpractice is not deliberate indifference). As the Supreme Court has stated, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle,* 429 U.S. at 106.

Related to the principle that malpractice does not violate the Eighth Amendment is the fact that a mere disagreement among medical personnel cannot support a constitutional claim. *See Boring v. Kozakiewicz,* 833 F.2d 468, 473 (3d Cir. 1987). Instead, the standard applied when reviewing the actions of prison doctors and medical staff in this type of case is deferential. *Inmates of Allegheny County Jail,* 612 F.2d at 762. "[P]rison authorities are accorded

-13-

considerable latitude in the diagnosis and treatment of prisoners," *Durmer*, 991 F.2d at 67, and

"mere disagreements over medical judgment" do not rise to the level of an Eighth Amendment

violation. *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990).

Furthermore, a court will generally not find deliberate indifference when some level of

medical care has been offered to the inmate. *Clark v. Doe,* No. Civ. A. 99-5616, 2000 WL

1522855, at *2 (E.D.Pa. Oct. 13, 2000) ("[C]ourts have consistently rejected Eighth Amendment

claims where an inmate has received some level of medical care."). Indeed, a court may look to

the quantity of services and types of treatments offered to the inmate in making this

determination. *Englerth v. Hetrick,* Civ. A. No. 87-5855, 1998 WL 11660, at *1 (E.D.Pa. Feb.

16, 1988) (finding the plaintiff received "substantial medical treatment while incarcerated" where

he had been seen thirty-five (35) times by the prison physician, forty-eight (48) times by the

nursing staff; three (3) times by the psychiatrist and forty-five (45) times by the psychologist).

In short, where a prisoner is provided with reasonable medical treatment, even if it is not

the treatment that he desires, a prisoner cannot prove "deliberate indifference."

### 1. *Individual Defendants Sherman, Smith, Dodrill, Watts and Kendig Should Be Dismissed Because They Merely Deferred To The Medical Professionals Already Treating Plaintiff*

The Amended Complaint identifies Individual Defendants Sherman, Smith, Dodrill,

Watts and Kendig as medical and/or prison supervisors who rendered no direct medical care to

plaintiff. (*See* Am. Compl., ¶ 5). To the contrary, the liability of Sherman, Dodrill and Watts is

premised only on their denial of plaintiff's administrative remedy requests and appeals. (*See*

Am. Compl., ¶¶ 19-21; Administrative Tort Claim No. TRT-NER-2005-00083 at 2, 4 and 7

(attached as Exhibit 1c to Decl. of Joyce Horikawa.)) Plaintiff alleges generally that all the

-14-

Individual Defendants denied his requested medical treatment, including Watts and Kendig. (*See* Am. Compl., ¶ 24).  But he makes no specific allegations that Smith and Kendig denied any of his requests or appeals.

The law in the Third Circuit is abundantly clear that prison officials who are not physicians cannot be considered deliberately indifferent to a prisoner's serious medical needs because they failed to respond directly to medical complaints of prisoners who were being treated by the prison doctor.  *See Durmer,* 991 F.2d at 69; *Boyd v. Pugh,* No. Civ. 3:CV-04-1761, 2004 WL 1430087, at *6 (M.D. Pa. June 17, 2005) (warden cannot be considered deliberately indifferent for failing to respond to inmate's medical complaints where prisoner is under care of medical experts); *Thomas v. Zinkel,* 155 F. Supp. 2d 408, 412 (E.D. Pa. 2001) (health care administrators cannot be found deliberately indifferent when inmate receiving care from a doctor); *Hull v. Dotter,* No. CIV. A. 96-3087, 1997 WL 327551, at *4 (E.D. Pa. June 12, 1997) (same).

Here, plaintiff is attempting to hold Individual Defendants Sherman, Smith, Dodrill, Kendig and Watts to a higher standard than that required by the Third Circuit.  There are no allegations that these defendants provided any medical treatment to plaintiff.  Nor is there any such evidence in the record.  Rather, plaintiff contends that Individual Defendants Sherman, Dodrill and Watts were the prison administrators who denied his administrative remedy requests and appeals seeking a liver biopsy and interferon/ribavirin treatment.  Although Plaintiff alleges that Smith and Kendig denied his requested treatment, he makes no allegations that these defendants denied any specific requests or appeals.  Rather, plaintiff merely alleges that Smith

was the Health Services Administrator at FCI McKean, and Kendig was the BOP Medical Director. All of these Individual Defendants hold administrative – not clinical – positions.

The record evidence establishes that plaintiff was receiving medical care from the clinical medical staff at FCI McKean beginning with his incarceration there in June 2000 and continuing to the present. As such, under binding Third Circuit precedent, Individual Defendants Sherman, Smith, Dodrill, Watts and Kendig cannot be found deliberately indifferent for deferring to the medical professionals already treating plaintiff and for not responding on their own to plaintiff's medical complaints. Accordingly, plaintiff's *Bivens* claim against these defendants should be dismissed.[4]

> **2.      *Plaintiff's Treating Physicians, Individual Defendants Olson and Beam, Should Be Dismissed Because Plaintiff Cannot Prove They Acted With Deliberate Indifference***

Plaintiff contends that the denial of a liver biopsy and Interferon/Ribavirin treatment for his Hepatitis C amounts to an Eighth Amendment violation. Thus, plaintiff is challenging the determination of his treating physicians, Individual Defendants Olson and Beam, not to use a particular diagnostic procedure or initiate a particular medical treatment. As such, this is merely a disagreement over medical judgment that, as explained, does not rise to the level of deliberate indifference. *See White,* 987 F.2d at 110.

---

[4]Because there is no allegation that Individual Defendants Smith and Kendig were personally involved in violating plaintiff's constitutional rights, their liability is apparently based on respondeat superior. But that theory is not a basis for liability under *Bivens*. *Francis v. Dodrill,* No. 3:04CV1694, 2005 WL 2216582, at *2, n.3 (M.D. Pa. Sept. 12, 2005); *see Rode v. Dellarciprete,* 845 F.2d 1195, 1208 (3d Cir. 1988) (finding in § 1983 action that "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior."). The *Bivens* claim against Smith and Kendig should be dismissed for this reason as well.

A review of plaintiff's prison medical records, summarized in Dr. Olson's declaration and earlier in this brief, demonstrates without question that plaintiff has received regular and adequate attention from the medical staff at FCI McKean. Specifically, the record evidence establishes the following:

• Since plaintiff was diagnosed with Hepatitis C on July 26, 2000 (Decl. Of Dennis Olson, M.D., ¶ 3k), his condition was closely monitored at the Chronic Care Clinic approximately every three (3) months. (*See id.,* ¶¶ 3m, 3v, 3aa, 3ff, 3pp, 3bbb, 3iii, 3lll, 3qqq, 3eeee, 3llll, 3uuuu, 3yyyy, 3jjjjj, 3aaaaaa, 3oooooo, 3gggggggg and 3qqqqqqqq.)

• At each regular Chronic Care Clinic visit, plaintiff was examined and his condition was monitored. (*See, e.g., id.*, ¶ 3m.) He was also educated as to his condition, including the nature of his disease and its complications, and was often given recommendations for controlling his problems such as diet, weight loss and exercise advice. (*See, e.g., id.*) At these visits, plaintiff also presented other medical problems. These problems ranged from recurrent ones such as ulcers and edemas caused by his peripheral venous insufficiency/peripheral vascular disease (*see, e.g., id.*, ¶¶ 3m, 3yyyy), as well as occasional conditions such as bronchitis (*see, e.g., id.*, ¶ 3qqqqqqq). The Health Services staff at FCI McKean addressed plaintiff 's complaints, including issuing and renewing prescriptions. (*See, e.g., id.*, ¶ 3aa .)

• Between his regular Chronic Care Clinic visits, plaintiff often had medical complaints and was regularly treated by FCI McKean Health Services staff. (*See, e.g., id.*, ¶ 3jj.) Dr. Olson's declaration lists 178 occasions on which plaintiff sought and received medical care. (*See id.*, ¶¶ 3a through 3vvvvvv.)

• Plaintiff's Hepatitis C was also monitored by numerous laboratory tests that were performed regularly. (*See id.,* ¶¶ 3g, 3bb, 3qq, 3kkk, 3nnn, 3rrr, 3xxx, 3gggg, 3mmmm, 3oooo, elllll, 3cccccc, 3aaaaaaa and 3jjjjjjj.) These laboratory tests measured plaintiff's ALT levels, and found them to be consistently normal or very near normal. (*See id.,* ¶¶ 3g, 3bb, 3qq, 3kkk, 3nnn, 3rrr, 3gggg, 3mmmm, 3oooo, elllll, 3cccccc and 3aaaaaaa.)

Because the record evidence demonstrates that plaintiff received frequent monitoring and treatment, plaintiff cannot demonstrate that Drs. Olson and Beam acted with deliberate indifference to his Hepatitis C. Plaintiff also fails to establish deliberate indifference because his treatment for Hepatitis C is consistent with the Federal Bureau of Prisons Clinical Practice Guidelines For the Prevention and Treatment of Viral Hepatitis (attached as Exhibit 1d to Decl. of Joyce Horikawa.).[5] Under the heading "[i]dentifying candidates for liver biopsy," the BOP Guidelines state that "[i]nmates with chronic HCV infection should be periodically evaluated and have ALT levels monitored to help determine if liver biopsy is warranted in accordance with the following . . . ." (*Id.* at 42.) The guidelines go on to explain the procedure for inmates with certain categories of ALT levels:

• Normal ALT – "A liver biopsy is usually not warranted if ALT levels are persistently normal." (*Id.*)

---

[5]The BOP guidelines for the treatment of Hepatitis C are based on the National Institutes of Health Consensus Development Conference Statement, "Management of Hepatitis C: 2002" (attached as Exhibit 1e to Decl. of Joyce Horikawa.). (*See* Exhibit 1d, Federal Bureau of Prisons Clinical Practice Guidelines for the Prevention and Treatment of Viral Hepatitis, February 2003 at 2 (attached to Decl. of Joyce Horikawa.))

-18-

•  Minimally elevated ALT – "Inmates with minimally elevated ALT levels should have ALT levels remeasured over 3 to 6 months and should then be reassessed.  The decision to obtain a liver biopsy in these inmates should be maintained on a case-by-case basis."  (*Id.* at 43.)

•  ALT two times normal or greater – "Inmates with ALT levels two times the upper limit of normal or greater should have ALT measurements repeated at least twice over a 6 month period.  Inmates with persistent elevations in ALT levels > twice normal should be referred directly for liver biopsy unless antiviral therapy is contraindicated."  (*Id.*)

Plaintiff's medical records demonstrate that his ALT levels were consistently normal or very near normal.  Although plaintiff's ALT levels were occasionally minimally elevated, the BOP Guidelines do not require a liver biopsy under plaintiff's circumstances.  Plaintiff had one measurement in which his ALT level was two times normal or greater, but because the tests were repeated and the elevation was not persistent, the BOP Guidelines do not require a liver biopsy.  Because plaintiff does not require a liver biopsy, the BOP Guidelines do not recommend interferon/ribaviron therapy.  (*See id.* at 44 ("Antiviral therapy is recommended for patients with chronic hepatitis C and a liver biopsy with portal or bridging fibrosis and at least moderate inflamation and necrosis."))

Accordingly, plaintiff's medical record establishes that the decision not to conduct a liver biopsy and/or initiate interferon/ribavirin treatment has been based on sound clinical expertise and is consistent with BOP and national treatment guidelines.  Because plaintiff cannot demonstrate that Individual Defendants Beam and Olson acted with deliberate indifference, these defendants should be dismissed from this civil action.  *See Iseley v. Dragovich,* 90 Fed. Appx. 577, 581 (3d Cir. 2004) (denial of liver biopsy and interferon/ribavirin treatment did not amount

to deliberate indifference because, in the professional judgment of prison physicians, Interferon treatment was contraindicated where inmate's condition had not progressed to the point where such treatment would have been appropriate); *Christy v. Robinson,* 216 F. Supp. 2d 398, 416 (D.N.J. 2002) (holding that denial of interferon/ribavirin therapy to treat Hepatitis C did not amount to deliberate indifference where "nothing in the record suggests interferon/ribavirin is necessary for proper treatment and there is no evidence that the course of treatment adopted by Defendants deviated from the standard medical practice."); *see also Free v. Unknown Officers of the Bureau of Prisons,* 103 Fed. Appx. 334, 337 (10th Cir. 2004) (inmate's disagreement with prison doctors' denial of interferon/ribavirin therapy for his Hepatitis C "does not give rise to a claim for deliberate indifference to serious medical needs.").

### C.   Even If Plaintiff Has Stated A Cognizable Constitutional Claim, The Individual Defendants Are Entitled To Qualified Immunity

A federal government employee is generally entitled to immunity from suit for personal damages if his or her conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). The qualified immunity defense in this context is "an immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985). Accordingly, the Supreme Court has repeatedly stressed that qualified immunity issues should be resolved at the earliest stage of litigation. *See e.g., Hunter v. Bryant,* 502 U.S. 224, 226 (1991).

In this case, it is well-established that the government has a constitutional obligation to provide inmates with adequate medical care. However, it was objectively reasonable for the Individual Defendants to believe that their denial of plaintiff's requested treatment did not violate

-20-

such a right.  As previously discussed, plaintiff was provided with medical attention on numerous

occasions, and it was objectively reasonable for defendants to believe that they were adequately

tending to plaintiff's medical needs.  The fact that plaintiff disagrees with the level of care does

not amount to the violation of a clearly established constitutional right.  Therefore, Individual

Defendants Sherman, Smith, Dodrill, Watts, Kendig, Olson and Beam should be dismissed from

this action on the basis of qualified immunity.

## II.    PLAINTIFF'S FTCA CLAIM SHOULD BE DISMISSED

Plaintiff's FTCA claim should be dismissed as to all the Individual Defendants, because

they are not proper parties to such a claim.  Additionally, the FTCA claim should be dismissed

for lack of subject matter jurisdiction because plaintiff failed to exhaust his administrative

remedies before filing this action.

### A.    The Individual Defendants Are Not Proper Parties To The FTCA Claim

Plaintiff cannot proceed with his FTCA claim against Individual Defendants Olson,

Beam, Smith, Sherman, Dodrill, Watts and Kendig.  Although the FTCA represents a limited

waiver of sovereign immunity for certain torts committed by federal employees, *see United

States v. Orleans*, 425 U.S. 807 (1976), the United States is the only proper defendant in an

action brought under the FTCA.  *See Good v. Ohio Edison Co.*, 149 F.3d 413, 418 (6th Cir.

1998); *Kennedy v. United States Postal Serv.*, 145 F.3d 1077, 1078 (9th Cir. 1998); *Mars v.

Hanberry*, 752 F.2d 254, 255 (6th Cir. 1985).  Because the FTCA is a limited waiver of sovereign

immunity that extends to the United States but not to its agencies and employees, all named

individual defendants should be dismissed.

-21-

**B.** **Plaintiff Failed To Exhaust His Administrative Remedies Under The FTCA**

Plaintiff's FTCA claim should be dismissed in its entirety because plaintiff has failed to exhaust his administrative remedies before filing the complaint in this action. Indeed, the FTCA specifically requires that a claimant present an administrative tort to the appropriate administrative agency, and that the tort claim must be finally denied by the agency before a civil action may be initiated:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, unless the claimant *shall have first presented the claim to the appropriate Federal agency and his claims shall have been finally denied by the agency in writing and sent by certified or registered mail.*

28 U.S.C. § 2675(a) (emphasis added). This is "the balance struck by Congress in the context of tort claims against the Government" and courts "are not free to construe it so as to defeat its obvious purpose, which is to encourage the prompt presentation of claims." *United States v. Kubrick,* 444 U.S. 111, 117 (1979).

The administrative exhaustion requirement is clear and mandatory. *See McNeil v. United States,* 508 U.S. 106, 111 (1993) (explaining that statutory exhaustion requirement "is unambiguous. We are not free to rewrite the statutory text."); *Wujick v. Dale & Dale, Inc.,* 43 F.3d 790, 793-94 (3d Cir. 1994) (noting that administrative exhaustion under FTCA is mandatory and the Supreme Court "firmly rejected the 'no harm, no foul' reasoning"); *Bialowas v. United States,* 443 F.2d 1047, 1049 (3d Cir. 1971) (requiring a claim be submitted to and finally denied by the appropriate federal agency before filing a lawsuit). Because the FTCA represents a conditional limited waiver of sovereign immunity, the requirement of administrative exhaustion

is jurisdictional and cannot be waived.  *See, e.g., Livera v. First National State Bank of New Jersey,* 879 F.2d 1186, 95 (3d Cir. 1989); *Bialowas,* 443 F.2d 1047, 1049.

Accordingly, if a plaintiff files a complaint before his administrative claim has been denied, the suit must be dismissed for lack of subject matter jurisdiction.  *See McNeil,* 508 U.S. at 112-13.  In *McNeil,* a *pro se* inmate filed his complaint four (4) months before submitting an administrative tort claim with the appropriate agency, and about five (5) months before that administrative claim was finally denied.  *See id.* at 108.  Although no substantial progress had taken place in the litigation before the administrative claim was denied, the Supreme Court held that it lacked subject matter jurisdiction because the FTCA action was instituted before the plaintiff had exhausted his administrative remedies.  It therefore affirmed the dismissal of the plaintiff's claim.  *See id.* at 111-13.  As discussed below, the same situation as in *McNeil* occurred in this case, and the same result should pertain.

Plaintiff here filed his original complaint on October 4, 2004.  Absent from the original complaint were any causes of action for tort or negligence.  Plaintiff's administrative tort claim was not denied, however, until March 24, 2005.  (*See* Administrative Tort Case No. TRT-NER-2005-00083 at 8 (attached as Exhibit 1c to Decl. of Joyce Horikawa.))  Because plaintiff failed to exhaust his administrative remedies before filing his complaint, this Court lacks subject matter jurisdiction and plaintiff's FTCA claim should be dismissed.[6]  Indeed, plaintiff apparently

---

[6]Although plaintiff exhausted his administrative remedies with respect to his *Bivens* claim, this denial does not carry over to a FTCA claim.  Courts have clarified that administrative exhaustion under the Prison Litigation Reform Act ("PLRA") does not satisfy the administrative exhaustion requirements under the FTCA, and that the process differs in both form and substance.  *See, e.g., Funches v. Reish,* No. 97-7611(LBS), 1998 WL 695904, at *7-9 (S.D.N.Y. Oct. 5, 1998) (finding exhaustion of administrative tort claim does not satisfy the PLRA's exhaustion requirement for filing of *Bivens* action).

-23-

recognizes that his action is fatally flawed, because he attempted to cure this defect by filing an Amended Complaint on or about May 16, 2005.  The Amended Complaint includes allegations of negligence.  (*See* Am. Compl., ¶ 1.)

Courts have already determined, however, that failure to exhaust administrative remedies cannot be cured by the filing of an amended complaint.  In *Sparrow v. United States Postal Service,* 825 F. Supp. 252 (E.D. Cal. May 28, 1993), the plaintiff filed a complaint under the FTCA approximately six months prior to the denial of his administrative tort claim.  Six months after the denial of his administrative tort claim, the plaintiff attempted to cure the jurisdictional defect by filing an amended complaint under the FTCA, rather than by instituting a new suit.  The district court explained, however, that "[t]o permit the premature filing of an FTCA action to be cured by the filing of an amended complaint upon denial of the administrative claim would be inconsistent with both *McNeil* and the rationale behind the jurisdictional prerequisite mandated by the FTCA, 28 U.S.C. § 2675(a)."  *Id.* at 254.  It also explained that "[i]f the claimant is permitted to bring suit prematurely and simply amend his complaint after denial of the administrative claim, the exhaustion requirement would be rendered meaningless."  *Id.* at 255.

Because plaintiff did not exhaust his available administrative remedies under the FTCA until nearly six months after he filed the complaint in this matter, this Court lacks subject matter jurisdiction over the FTCA claim.  Further, this flaw cannot be fixed simply by the filing of an amended complaint after the administrative claim is finally denied.  Therefore, plaintiff's FTCA claim should be dismissed for lack of subject matter jurisdiction.

## **CONCLUSION**

For all the foregoing reasons, this Court should dismiss plaintiff's Amended Complaint

with prejudice.  In the alternative, the Court should grant summary judgment in defendants' favor

and against plaintiff.

Respectfully submitted,

MARY BETH BUCHANAN
United States Attorney

/s/ Megan E. Farrell
MEGAN E. FARRELL
Assistant U.S. Attorney
Western District of PA
700 Grant St., Suite 4000
Pittsburgh, PA 15219
(412) 894-7429
PA ID # 76972

Counsel for defendants

Of Counsel:
Joyce Horikawa
Senior Attorney Advisor
Federal Bureau of Prisons
U.S. Custom House – 7th Floor
Second and Chestnut Streets
Philadelphia, PA 19104

Dated: September 21, 2005

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 21st day of September, 2005, a true and correct copy of

the foregoing Defendants' Motion To Dismiss Or, In The Alternative, Motion For Summary

Judgment, and Brief In Support Thereof was served via first-class mail upon the following:

Darryl Lee Cherry
Reg. No. 07928-078
FCI McKean
P.O. Box 8000
Bradford, PA 16701

/s/ Megan E. Farrell
MEGAN E. FARRELL
Assistant U.S. Attorney